```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KELVIN FORD, | HON. JEROME B. SIMANDLE |
| Petitioner, | Civil No. 08-4932 (JBS) |
| v. | |
| UNITED STATES OF AMERICA, | **OPINION** |
| Respondent. | |

APPEARANCES:

Mr. Kelvin Ford, Pro Se
#17678-083
U.S. Penitentiary Lee County
Inmate Mail/Parcels
P.O. Box 305
Jonesville, Virginia 24263

Paul J. Fishman
United States Attorney
    By: Diana V. Carrig
        Assistant U.S. Attorney
Camden Federal Building and
United States Courthouse
P.O. Box 2098
Camden, New Jersey 08101
    Attorney for Respondent

**SIMANDLE**, District Judge:

## I.  INTRODUCTION

This matter is before the Court on Kelvin Ford's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 [Docket Item 8]. A federal jury found Kelvin Ford guilty of two counts of bank robbery and two counts related to the use of firearm during the robberies, and this Court sentenced him to 460 months

imprisonment. The principal issues raised by the petition are whether Petitioner's constitutional rights were infringed by the fact that the initial indictment, superseding indictment, and jury instructions included surplus language; whether federal bank robbery can serve as a predicate crime for the firearm enhancement; and whether the government's introduction of an outdated FDIC certificate at trial provides Petitioner with a basis for relief upon one of his bank robbery convictions.

**II. BACKGROUND**

A grand jury initially indicted Ford for two counts of bank robbery pursuant to 18 U.S.C. § 2113(a), for the robberies of Fleet Bank and Commerce Bank on June 11 and 12, 2003. (Pet. Ex. A.) Subsequently, the grand jury indicted Ford on a four-count superseding indictment. (Pet. Ex. B.) The charges included the two counts under 18 U.S.C. § 2113(a) (Counts 1 and 3), as well as two counts under 18 U.S.C. § 924(c)(1)(A) and (C) for knowingly and wilfully possessing and brandishing a firearm during the two robberies (Counts 2 and 4). (Id.)

The provision of the federal bank robbery statute under which Ford was indicted subjects to criminal punishment "[w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property"

belonging to any FDIC insured bank.  18 U.S.C. § 2113(a). Federal law also provides for additional criminal punishment for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," and sets a seven-year minimum sentence if the firearm is brandished.  18 U.S.C. § 924(c)(1)(A)(ii).  The statute also provides for especially strict penalties for second or subsequent convictions under the subsection.  18 U.S.C. § 924(c)(1)(C).  A "crime of violence" is "an offense that is a felony and has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  § 924(c)(3).

   Originally, Count 1 of the superseding indictment read in relevant part: "On or about June 11, 2003, at Mays Landing, in the District of New Jersey, and elsewhere, the defendant KELVIN FORD knowingly and willfully, by force and violence, and by intimidation, did, while a firearm was possessed and brandished, take from the person and presence of an employee of Fleet Bank, N.A., Mays Landing, approximately $9,802.00."  But, before trial, the Court granted Ford's motion to omit the language from the bank robbery counts which referred to the possession and

brandishing of a firearm.

Ford was convicted on June 6, 2005, and his conviction was affirmed on February 6, 2007, and the Supreme Court declined to hear his appeal on October 1, 2007.  He filed the present petition on October 6, 2008.[1]

Ford asserts six grounds for relief.  The first two relate to the original indictment language and the relationship between 18 U.S.C. § 2113(a) and 18 U.S.C. § 924(c).  The next two relate to the ineffectiveness of his counsel for not raising the first two arguments as well as other arguments Petitioner asserts that he wanted raised.  The fifth ground involves an argument that one of the banks was not FDIC-insured.  And the sixth ground is an argument that his appellate process was unfair because his counsel would not raise certain arguments and because the Court of Appeals did not review his motion for appointment of new counsel before deciding the appeal.

## III.  DISCUSSION

### A. Standard of Review

28 U.S.C. § 2255(a) allows a prisoner held on a federal sentence to apply to have the sentence vacated, set aside, or corrected if, among other things, the sentence was imposed in violation of the Constitution or is otherwise subject to

---

[1]  The petition was post-marked September 30, 2008.

collateral attack, as in the case of an error of law that amounts to a "fundamental defect which inherently results in a miscarriage of justice."  Brecht v. Abrahamson, 507 U.S. 619, 634 n.8 (1993) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).[2]  Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice."  Massaro v. United States, 538 U.S. 500, 504 (2003).  One of the ways a convicted defendant can show justifying cause is by demonstrating ineffective assistance of counsel.  United States v. Mannino, 212 F.3d 835, 840 (3d Cir. 2000).

A pleading filed without a lawyer is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Such a petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v.

---

[2]  Section 2255 states, in relevant part:
 A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

Attorney Gen., 872 F.2d 714, 721-22 (3d Cir. 1989).  A § 2255 petition may be denied without an evidentiary hearing when files and records show conclusively that the prisoner is entitled to no relief.  28 U.S.C. § 2255.

### B. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel requires two showings.  Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that his counsel's performance was deficient.  Strickland, 466 U.S. at 687.  Specifically, in order to succeed on the deficiency prong, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  This requires that the Court examine the entire proceedings and determine "whether, in light of all the circumstances, the [conduct of Petitioner's trial counsel was] outside the wide range of professionally competent assistance."  Id. at 690.  The Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Once the deficiency prong is established, Petitioner must then show that as a result of the deficient performance, he was ultimately prejudiced. <u>Strickland</u>, 466 U.S. at 687. This prong of the test requires that Petitioner show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. A reasonable probability is a probability sufficient to undermine confidence in that outcome. <u>Strickland</u>, 466 U.S. at 699. Thus, Petitioner must show "that counsel's errors were so serious as to deprive [Petitioner] of a fair [hearing] . . . whose result is reliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993) (internal quotes and citation omitted).

**C. Grounds for Relief**

    1. <u>Grounds One and Three: Language of Indictment, Supeseding Indictment, and Jury Charges with respect to 18 U.S.C. § 2113(a)</u>

Petitioner argues that the facts alleged in his superseding indictment do not constitute an offense under 18 U.S.C. § 2113(a), because that statute sets out a general intent offense, but he was charged with "knowingly and wilfully" engaging in the proscribed conduct.

Petitioner's argument misunderstands the relationship between general intent and specific intent. Even though 18 U.S.C. § 2113(a) has been characterized as a general intent

crime, see Carter v. United States, 530 U.S. 255, 268 (2000), that does not mean that proof of knowing or willful conduct therefore fails to prove a violation of the statute.  Proof of specific intent is often proof of general intent in the way that proof that something is an apple is proof that it is fruit.  Even when proof of specific intent that some result be achieved does not itself suffice to prove some other necessary culpability for a crime, it does not foreclose such proof.  The use of the "knowingly and wilfully" language therefore does not show that the prosecution failed to satisfy the general intent requirements of 18 U.S.C. § 2113(a).

   Petitioner also argues that the inclusion of the "knowingly and wilfully" language in the superseding indictment and jury instructions was unconstitutional because it was prejudicial surplus language not required by the statute.  There are circumstances under which surplus language in an indictment can be prejudicial.  But in this case, the superseding indictment included this information as part of other counts anyway, and the prosecution proved it at trial.  See United States v. Yeaman, 987 F. Supp. 373, 377 (E.D. Pa. 1997) ("Language is properly included in an indictment if it pertains to matters which the government will prove at trial.").  Thus, there was no prejudice.  The Government's decision to include that language in the indictment for Counts 1 and 3 and the jury charges risked that the jury

8

would fail to find the unnecessary facts and acquit, see <u>United States v. Jackson</u>, 38 Fed. App'x 59, 62 (2d 2002), but so long as the conduct required to prove a violation of 2113(a) is ultimately proven — as it is when knowing violence or intimidation is shown — then the inclusion of superfluous facts in the indictment or jury charge does not harm the criminal defendant.

Finally, Petitioner argues that the inclusion of the surplus language prevented him from pleading double jeopardy if he were indicted in the future under an indictment without the surplus language. This argument is incorrect. The scope of the double jeopardy bar is determined by the conviction and the entire record supporting the conviction. <u>United States v. Jackson</u>, 344 F.2d 158, 160 (3d Cir. 1965). Petitioner's indictment, criminal case record, and conviction sufficiently bar any future indictment based on the bank robberies discussed in that indictment.

Because the Court finds that Ford's arguments on these issues lack merit, the Court need not reach the question of whether his counsel was ineffective for failing to raise them, or whether Ford waived the arguments by failing to raise them on appeal.

> 2. <u>Ground Two: Whether § 2113(a) can constitute a predicate crime to satisfy § 924(c)(1)(A)(ii)</u>

Section 924(c)(1)(A)(ii) adds an additional penalty for one who "uses or carries" or "in furtherance of any such crime . . . possesses" a firearm "during and in relation to any crime of violence."  Petitioner argues that this firearm enhancement statute requires the predicate crime to have as an element the use of a firearm, and the government improperly inserted such an element with surplus language.  But it is not true that the predicate crime must have as an element the use of a firearm. The underlying crime need only be a "crime of violence."  § 924(c)(3).  It is true that the government must separately prove that the firearm is used in the way specified by § 924(c), but there is no requirement that this use be part of the elements of the predicate crime.

Petitioner also argues that § 2113(a) cannot be a predicate "crime of violence" because it does not require specific intent. The Third Circuit Court of Appeals has held that the plain language of the identically-worded statute at 18 U.S.C. § 16 defining "crime of violence" required that the crime in question have as an element a specific intent to use force.  See Singh v. Gonzales, 432 F.3d 533, 539-40 (3d Cir. 2006); Tran v. Gonzales, 414 F.3d 464, 470 (3d Cir. 2005) (citing United States v. Parson,

955 F.2d 858, 866 (3d Cir. 1992)).³  Petitioner argues that since the Supreme Court has held § 2113(a) to be a general intent crime, see Carter v. United States, 530 U.S. 255, 268 (2000), it therefore follows that it is not a crime of violence according to the Third Circuit Court of Appeals.

This argument conflates two different meanings of the term "specific intent."⁴  When "specific intent" is used to describe the requirement that the actor have a particular purpose in carrying out a crime, it is ambiguous for crimes with multiple explicit or implicit result elements, since describing the crime as a specific intent crime does not specify which result the actor was required to have had the purpose to bring about.  See Bailey, 444 U.S. at 403 ("'[C]lear analysis requires that the question of the kind of culpability required to establish the commission of an offense be faced separately with respect to each

---

³ 18 U.S.C. § 16, like § 924(c)(3), defines "crimes of violence" as "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

⁴ This confusion is not the Petitioner's fault, as many federal courts are just as confused.  See United States v. Zunie, 444 F.3d 1230, 1233-34 (10th Cir. 2006) ("Federal courts have adopted inconsistent definitions of 'general intent' and 'specific intent.'").  That is why courts and legislatures are wisely being urged to avoid the term altogether.  See United States v. Bailey, 444 U.S. 394, 403 (1980).

11

material element of the crime[.]'") (quoting American Law Institute, Model Penal Code, Comments 123).

It is true that § 2113(a) has been described as a general intent crime.  See Carter, 530 U.S. at 268; United States v. Brown, 547 F.2d 36, 39 (3d Cir. 1976).  But what these courts meant by this description was that the crime does not require the purpose to steal.  The distinction being made between "general" and "specific intent" crimes by Carter and Brown is a distinction between a requirement of a purpose to unlawfully take the money or that result simply being a consequence of the actor's intentional acts.  See Brown, 547 F.2d at 39 ("It therefore is immaterial for sections 2113(a) and (d) whether the subjective intent of a bank robber is to steal that to which he has no claim or to recover his own deposit; the crime is his resort to force and violence, or intimidation, in the presence of another person to accomplish his purposes.").  The holdings of those cases mean that one can be convicted of bank robbery even if one intends to retrieve one's own deposits, or even if one intends to get caught and never succeed in stealing the money.

The distinction being drawn by the Third Circuit Court of Appeals in Singh and Tran regards a different question, even though the same term is used.  In those cases, the underlying criminal statutes which had been characterized as prohibiting "crimes of violence" prohibited acts which may harm people, but

12

did not require knowing or purposeful use violence.  By requiring a "specific intent" to commit violence, the Court of Appeals was distinguishing crimes which require knowing or intentional use of violence from crimes that may merely result in violence because of the recklessness or negligence of the actor.  See Tran v. Gonzales, 414 F.3d 464, 469 (3d Cir. 2005) ("Our own Court has stated unequivocally that the 'use of physical force' under § 16(a) requires specific intent; recklessness will not suffice.").

This ambiguity arises because bank robbery has two elements that potentially require specific intent:  the result element related to the property ("takes . . . property") and the result element related to the violence (i.e., requiring harm or threat of harm).  See § 2113(a); United States v. Askari, 140 F.3d 536, 541 (3d Cir. 1998) (explaining that intimidation requires a threat of force), vacated on other ground by 159 F.3d 774 (3rd Cir. 1998).  The fact that the Court of Appeals' decisions in Tran and Brown are applying the term "specific intent" to different elements explains the seeming paradox in the requirement of a "specific intent" crime to be a crime of violence, and the finding that § 2113(a) is not a "specific intent" crime.  If § 2113(a) is analyzed using the more accurate terminology, its requirements are much clearer: in order to commit bank robbery, the actor must intentionally use violence or intentionally threaten to use violence, but there is no element

13

of the crime that requires any particular mental state with respect to taking the money.

The Third Circuit has upheld § 924(c) convictions in which § 2113(a) served as the predicate crime of violence. See United States v. Williams, 344 F.3d 365, 370-71 (3d Cir. 2003) (citing United States v. Johnson, 962 F.2d 1308, 1312 (8th Cir. 1992)). Accord United States v. Wright, 215 F.3d 1020, 1028 (9th Cir. 2000).[5] Any other result would pervert the plain language of the statutes. Section 2113(a) requires the use of force or the threat of force, and § 924(c)(3)(A) characterizes crimes of violence as having "as an element the use, attempted use, or threatened use of physical force."[6]

---

[5] Additionally, even if § 2113(a) did not qualify as a crime of violence under § 924(c)(3)(A), it would likely qualify under § 924(c)(3)(B), because a crime involving intimidation "by its nature, involves a substantial risk that physical force" will be used. See § 924(c)(3)(B).

[6] On the surface it may seem that another potential problem with § 2113(a) as a predicate "crime of violence" is that the disjunctive second section does not require violence at all. Ordinarily, a crime of violence must be a crime of violence on its face, ignoring whether the actual conduct in any particular case was violent. Leocal v. Ashcroft, 543 U.S. 1, 11 (2004) ("The underlying facts of the conviction are not relevant; rather, we must look to the elements and the nature of the offense of conviction when determining whether it is a crime of violence."); Taylor v. United States, 495 U.S. 575, 600-02 (1990)(using this categorical approach to analyze predicate crimes under § 924(e)). But where the predicate crime contains multiple disjunctive elements, some ways to commit the crime may be categorically a crime of violence even if some of the permutations are nonviolent. See United States v. Mendez, 992 F.2d 1488 (9th Cir. 1993); United States v. Coleman, 158 F.3d 199, 202 (4th Cir. 1998).

14

The Court need not reach the question of whether Petitioner waived this claim by failing to raise it on appeal, as it has no merit.

### 3. Ground Four: General Ineffective Assistance of Counsel

In this section, Petitioner raises a number of claims regarding ineffective assistance of counsel, some of which are already addressed above. There are two areas of alleged ineffectiveness of his counsel which are not otherwise addressed in the above sections.

#### a. Rule 404(b) challenge as to firearm evidence

Petitioner argues that his counsel failed to object to the introduction of evidence regarding his use of a firearm during the bank robbery.[7] Rule 404(b) of the Federal Rules of Evidence prohibits the introduction of evidence regarding prior bad acts in order to "prove the character of a person in order to show action in conformity therewith." 404(b), Fed. R. Evid. Petitioner's argument appears to be premised on the notion that the Government need not have put on evidence about use of the

---

[7] The Rule provides in relevant part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b).

firearm during the robbery because 2113(a) did not require it. But this evidence was not used in an attempt to "prove the character" of Petitioner. Rather, it was used to prove the elements of the 2113(a) ("[w]hoever, by force and violence, or by intimidation, takes"), and § 924(c). Evidence of use of a firearm to effect the bank robbery was therefore intrinsic to the bank robbery charge. Therefore, there was no potential for a meritorious Rule 404(b) challenge.

b. Deletion of Language in Superseding Indictment

Petitioner maintains that his attorney should have objected to the Court's redaction of the language "while a firearm was possessed and brandished" from the bank robbery charges of the superseding indictment, arguing that the amended indictment had to be resubmitted to a grand jury. Compare May 23, 2005 Tr. 10:15-23 ("Jury Instructions") with [Docket Item 28, ("Superseding Indictment").

There is no dispute that, even without the firearm language, the language of the indictment (and of the jury charge) was sufficient to allege the crime of bank robbery under § 2113(a). Instead, Petitioner's argument is that redacting the firearm language presented the petit jury with a sufficiently different set of facts underlying the charge that it was improper to present the charge that way without first seeing whether a grand

16

jury would indict absent the firearm language.

A part of the indictment unnecessary to and independent of the allegations of the offense proved may be ignored. United States v. Coyle, 63 F.3d 1239, 1248 (3d Cir. 1995) (citing United States v. Miller, 471 U.S. 130, 136 (1985)). It is not error to drop such phrases from the indictment. United States v. Tykarsky, 446 F.3d 458, 474 (3d Cir. 2006); United States v. Zingaro, 858 F.2d 94, 98 (2d Cir. 1988). What is impermissible is a change to the indictment that makes it easier to convict, or permits conviction upon a crime not charged. See generally Stirone v. United States, 361 U.S. 212 (1960). In this case, striking the surplus language regarding the use of the firearm did not make it easier for the petit jury to convict Petitioner of the § 2113(a) offense, since even if the firearm language had been included it would not have been necessary to find those facts beyond a reasonable doubt in order to sustain the § 2113(a) charge.[8] Nor did the change in language permit conviction upon a crime that was not charged in the superseding indictment – the conviction was upon a violation of § 2113(a) based on the robberies alleged in the superseding indictment.

Under Petitioner's theory, any deletion of surplus language would constitute a violation of a defendant's grand jury rights,

---

[8]  Indeed, the Government ultimately proved the facts related to the firearm offenses anyway, so Petitioner would be unable to show prejudice.

as one may speculate about whether the grand jury would have charged upon the different set of alleged facts. But this position has long been rejected in federal law. See <u>Miller</u>, 471 U.S. at 144 (overruling in part <u>Ex parte Bain</u>, 121 U.S. 1 (1887)). The failure to object to the deletion of unnecessary language cannot provide the basis for an argument regarding ineffective assistance of counsel.

### 4. <u>Ground Five: Whether Fleet Bank was insured by FDIC</u>

Petitioner argues that the FDIC certificate introduced at trial to prove that Fleet Bank was FDIC insured was outdated. But Petitioner's argument that the certificate was outdated is also an argument that the bank was FDIC insured; he maintains that "[o]n September 1, 2000 Fleet Bank merged into Fleet National Bank under FDIC Certificate number 2558," which means the certificate issued prior to that merger was no longer valid — but this also means that the bank was FDIC insured at the time of the robbery under certificate number 2558. More importantly, Betsy Owens, the assistant manager of the bank, testified at trial that the bank was FDIC insured at the time of the robbery. (May 25, 2005 Tr. 138:1-3.) Petitioner was therefore not prejudiced by the introduction of an outdated FDIC certificate,

nor was the Court lacking jurisdiction over the crime, since the other evidence showed and Petitioner admits that the bank was FDIC insured.

        5.   <u>Ground Six:  Assistance of Counsel upon Appeal and Court of Appeals treatment of motion to appoint new counsel</u>

Because this ground rests on Petitioner's allegation that counsel failed to raise the other grounds on appeal, it is meritless because those other grounds are meritless.  This Court does not rely on Petitioner's failure to raise any of the other grounds on appeal as a basis for denying relief, and so it is irrelevant whether the failure to previous raise these arguments was a result of ineffective assistance of counsel.

## IV.  CONCLUSION

Petitioner's arguments largely rest on misunderstandings about the import of surplus language, and about the meaning of the term "specific intent."  These arguments are clearly meritless, and that is why his counsel did not raise them.  The petition will therefore be denied, and the accompanying Order will be entered.

| | |
|---|---|
| **February 18, 2011** |   s/ Jerome B. Simandle |
| Date | JEROME B. SIMANDLE |
| | United States District Judge |